AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### District of Nebraska

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 8:25MJ594 |
| MARIA MORENO-MORENO | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **October 22, 2025,** in the county of **Douglas** in the District of **Nebraska**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) & (b) | Assaulting, Resisting, or Impeding Certain Officers or Employees |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Quintin Erdman D.O.#5821*
*Complainant's signature*

Quintin A. Erdman, Deportation Officer
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 10/29/2025

*Judge's signature*

City and state: Omaha, Nebraska    MICHAEL D. NELSON, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | 8:25MJ594 |
| MARIA MORENO-MORENO, | |
| Defendant. | |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
AND ARREST WARRANT FOR MARIA MORENO-MORENO**

I, Quintin A. Erdman, a Deportation Officer (DO) employed by the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) duly appointed and sworn according to the law and at the time of the events herein was acting in his official capacity depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1. Your affiant was a federal law enforcement officer with the United States District Court, for the District of Nebraska, from November 2010 until September 2020. On September 13, 2020, your affiant was appointed as a Deportation Officer and subsequently completed the Basic Immigration Enforcement Training Program as required by 8 CFR 287.1(g). Your affiant is assigned to the Omaha ICE/ERO office and currently part of the fugitive operations team.

2. Deportation Officers are empowered to interrogate and arrest with or without warrant, any person believed to be an alien in the United States in violation of law, pursuant to Section 287 of the Immigration and Nationality Act (INA) (8 U.S.C. § 1357). This affidavit is based on your affiant's personal knowledge and information provided to him by other law enforcement officers involved in this investigation.

**PROBABLE CAUSE**

3. In my official capacity, your affiant made inquiries regarding **Maria MORENO-Moreno**'s (hereinto: **defendant**) alienage and potential removability. Your affiant reviewed DHS databases and determined the **defendant** to be a citizen and native of Mexico, that is unlawfully present in the United States and currently in immigration removal proceedings. Your affiant identified the **defendant** as being assigned a unique alien registration number (ARN, A-

Number) XXX-XXX-818 and date of birth XX/XX/1988.

4. Your affiant knows the **defendant** was encountered by United States Customs and Border Protection on May 20, 2022. Your affiant reviewed the **defendant**'s immigration history in preparation of the events that took place on October 22, 2025. Your affiant knows the **defendant** to be unlawfully present in the United States. Your affiant needed to be generally aware of the defendant's origins and status to target her son (**Luis MORENO-Moreno**) for administrative arrest for removal proceedings.

5. On or about October 4, 2025, your affiant learned of **Luis**'s presence in Omaha, Nebraska and developed probable cause to arrest **Luis** for violations of the INA. On October 3, 2025, **Luis** was convicted in the District Court of Douglas County, Nebraska, of Attempted Discharging a Firearm While in Proximity of any Motor Vehicle at Any Person, Dwelling, Building, Structure, Occupied Motor Vehicle, and Attempted Use of a Deadly Weapon (Gun) to Commit a Felony in CR24-5890.

6. Your affiant reviewed the court records and found that the District Court of Douglas County, Nebraska, sentenced **Luis** to three years' probation on both counts. Your affiant obtained contact information for the supervising probation officer.

7. On or about October 7, 2025, your affiant reviewed electronically available probation records for **Luis** which listed his address as 4240 Nebraska Avenue in Omaha. Your affiant reviewed the **defendant**'s address which matched **Luis**'s probation address. Your affiant reviewed DHS indices and verified the **defendant** listed 4240 Nebraska Avenue in Omaha as her address. Your affiant surveilled the address and observed a "for-sale" sign in the front yard and appeared to be uninhabited. Your affiant possesses experience interacting with the Douglas County Adult Probation, specifically the chief probation officer, and knows their office will generally not provide information or assistance to immigration officials. Your affiant contacted **Luis**'s assigned probation officer and asked for assistance in obtaining his last known address. The probation officer reported to your affiant that **Luis** recently moved in with his girlfriend at 3020 Franklin Street in Omaha. Your affiant surveilled the address on multiple occasions and did not see or obtain evidence that **Luis** lived at the reported location. Your affiant periodically reviewed DHS indices and open-source records to locate **Luis**'s whereabouts. Your affiant located no records of a change in address for **Luis** or the **defendant**.

8. On October 21, 2025, your affiant learned of a hearing scheduled for October 22, 2025, where **Luis** was petitioning the Douglas County District Court for permission to relocate to Portland, Oregon. Your affiant emailed the chief probation officer and the assigned probation officer a copy of the I-200 Warrant for Arrest of Alien, naming **Luis**, advising both officers of the hearing, and requested assistance in locating **Luis**. The assigned probation officer contacted your affiant and advised of a scheduled 11 a.m. meeting at the probation office on October 22, 2025. The probation officer asked for your affiant to make the arrest outside of the probation office in a discrete manner. Based on your affiant's experience with Douglas County Adult

Probation, your affiant believed the only way to effect an arrest before **Luis** moved to Portland, Oregon, was to comply with the probation officer's request.

9.      On Tuesday, October 22, 2025, your affiant, assisted by DO Madill and DO Doeden, encountered the **defendant**, outside the Nebraska District 4A Blondo Reporting Center located at 1821 N 73rd Street, Omaha, Nebraska.  Your affiant, DO Madill, and DO Doeden, wore plain clothes to the arrest location as had been requested by the probation officer.  Your affiant observed **Luis** quickly exit a vehicle, driven by the **defendant**, and entered the probation office at approximately 10:55 a.m. for his scheduled appointment.  Your affiant could not arrest **Luis** before he entered the building due to the speed at which he exited the vehicle and entered the building.  Your affiant waited outside close to the door in anticipation of his departure.  Your affiant observed the **defendant** sitting in the vehicle in the parking lot.  At approximately 11:30 a.m., your affiant observed **Luis** exit the probation office.  Your affiant, along with DO Doeden and DO Madill, approached **Luis** outside of the office near the exit door at a normal walking pace.  Your affiant identified **Luis** by name.  Your affiant said that he was an immigration officer with a warrant for **Luis**'s arrest in the English language.  Your affiant told **Luis** he was under arrest.  **Luis** responded that he was just there for a probation meeting, in the English language.  Your affiant told **Luis** again that he had a warrant for his arrest, he was being arrested on immigration offenses, and directed him to turn around and put his hands behind his back.  **Luis** backed away from your affiant towards the side of the building.  Your affiant reached for **Luis**'s right arm, and **Luis** tensed his arm and pulled away.  Your affiant, DO Doeden, and DO Madill, converged on **Luis** and grabbed his arms to place **Luis** in restraints while continuing to give verbal commands to stop resisting and place his hands behind his back.  **Luis** pushed your affiant away and began to yell "immigration."  **Luis** stated, "I have a son."  Your affiant reengaged Luis and began grabbing his arm trying to move it behind his back to place a handcuff on his wrist.  **Luis** continued to push and shove your affiant DO Doeden and DO Madill.

10.     The **defendant** and **Luis**'s girlfriend (**Juliana** Marily JIMENEZ-Reyes) ran up to where your affiant, DO Doeden, and DO Madill were trying to restrain **Luis**.  The **defendant** and **Juliana** began to shove, grab, and pull your affiant, DO Doeden, and DO Madill to prevent the arrest of Luis.  **Luis** made a statement that "immigration is trying to take me."  Your affiant heard the **defendant** yell "immigration" in response and "no".  **Luis** continued resisting arrest by pushing and tugging on officers.  DO Doeden grabbed **Luis**'s left arm and **Luis** struck DO Doeden's right arm with his fists closed multiple times trying to break his grip.  Your affiant observed the **defendant** grabbing DO Doeden's right arm trying to pull it away from **Luis** to prevent his arrest.  The **defendant** caused DO Doeden physical pain and left scratch marks on DO Doeden's right arm. Your affiant pulled the **defendant** away from DO Doeden and your affiant yelled "get back."  DO Doeden successfully placed **Luis**'s right wrist in a handcuff as they continued the struggle.  DO Doeden and DO Madill maneuvered **Luis** into a position where your affiant could apply a handcuff on **Luis**'s left arm.  Your affiant tried to place a restraint on **Luis** but was pulled back by one of the females and then had the handcuff ripped from his hand by the **defendant**.  Your affiant told the **defendant** and **Juliana** to "get back" on multiple occasions and that he was "immigration."  Your affiant then started towards the **defendant** to

acquire the stolen handcuffs. The **defendant** turned away from your affiant, began to run, and tripped falling to the ground. Your affiant, seeing the **defendant** appear to be incapacitated, returned his attention to restraining **Luis**. Your affiant approached **Luis**, and **Juliana** stepped in front of him. Your affiant pushed **Juliana** out of his way, told her he was immigration, and had a warrant and to stop. **Juliana** stayed out of your affiant's way, and your affiant reengaged **Luis**.

11. DO Doeden used an arm-bar technique to take **Luis** to the ground with DO Madill's assistance. DO Madill and your affiant continued to try and gain control of **Luis**'s other arm and succeeded in placing the handcuff on the other arm. DO Doeden and Madill helped **Luis** to his feet, and DO Doeden escorted him to your affiant's vehicle. DO Doeden placed **Luis** into the rear passenger seat and applied the seatbelt. The **defendant** approached your affiant, and your affiant grabbed the stolen handcuffs from her hand. The **defendant** then ran away from your affiant towards the parking lot and remained a distance away observing.

12. DO Madill and your affiant focused on **Juliana** due to her proximity. Your affiant told **Juliana** she was under arrest and placed handcuffs on her. DO Doeden heard the yelling and left the vehicle to assist your affiant and DO Madill. DO Madill placed **Juliana** into the vehicle, and your affiant turned his attention to the **defendant** who remained a distance away from your affiant. Your affiant told the **defendant** that she was under arrest, and she turned and ran towards her vehicle that was parked in front of the entrance of the probation office. The **defendant** entered the vehicle and began to leave the parking lot before DO Doeden and your affiant could make an arrest. The **defendant** quickly left the parking lot, nearly striking a parked vehicle, heading towards Blondo Street.

13. Your affiant returned to his vehicle while DO Doeden and DO Madill placed **Juliana** into DO Madill's vehicle. Your affiant returned to his vehicle and did not see **Luis** inside the vehicle. A person in the area advised that someone ran away and pointed south of your affiant's location. At some point during the arrest, an unknown person reported an assault in progress, and officers with the Omaha Police Department (OPD) responded to the area. DO Madill and DO Doeden left the probation office in their vehicles and began to search for **Luis**. Your affiant approached one of the responding OPD officers, identified himself as an immigration officer, and told them about the events and **Luis**'s flight from the back of the vehicle. Multiple OPD officers responded to the area and assisted with the search. Your affiant provided a description of **Luis**'s appearance and biographical information, and the information was broadcast to responding officers.

14. DO Madill located the **defendant**, on foot, near a restaurant (Burger King, 1902 N 72nd Omaha, Nebraska). DO Madill observed, from a distance, the **defendant** appearing to be searching for **Luis**. DO Madill requested DO Doeden's presence to make an arrest. DO Doeden arrived at DO Madill's location and they arrested the **defendant** and placed her in the rear of DO Madill's vehicle.

15. At the Omaha ICE office, your affiant observed that DO Doeden to have scratch marks on his arm and had scrapes on both of his knees. DO Doeden advised your affiant he obtained the scratch marks on his arm when the **defendant** grabbed him. Your affiant observed that DO Madill had scrapes on one of his hands. DO Doeden and DO Madill complained of knee pain resulting from the arrest of the **Luis**.

## CONCLUSION

16. On October 22, 2025, the **defendant** pushed, pulled, grabbed and interfered with your affiant's arrest of **Luis**. The **defendant** pushed, pulled, grabbed, causing scratch marks and pain, and interfered with DO Doeden's arrest of Luis. Based on these facts, your affiant believes there is **PROBABLE CAUSE** that the defendant, **Maria MORENO-Moreno,** inflicted bodily injury, assaulted, resisted, opposed, impeded, intimidated, or interfered with federal law enforcement officers while they were performing their official duties, in violation of Title 18 United States Code, Section 111(a)(1) and (b).

Affiant states that all statements contained in this affidavit are true and correct to the best of his knowledge.

_____
Quintin A. Erdman, Deportation Officer
Department of Homeland Security
Immigration and Customs Enforcement

SUBSCRIBED and SWORN to before me by telephone or other reliable electronic means this 29th day of October, 2025.

_____
MICHAEL D. NELSON
District of Nebraska